J-S17025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NOEL NIEVES | : | |
| | : | No. 3202 EDA 2016 |
| Appellant | : | |

Appeal from the PCRA Order August 30, 2016
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000858-2015

BEFORE: BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 16, 2018**

Noel Nieves appeals, *pro se*, from the order, entered in the Court of Common Pleas of Chester County, denying his petition filed pursuant to the Post Conviction Relief Act, ("PCRA"), 42 Pa.C.S.A. §§ 9541-45. After our review, we affirm based on the opinion authored by the Honorable Anthony A. Sarcione.

In October 2015, Nieves committed three gunpoint robberies in Chester County. On July 15, 2015, Nieves entered a negotiated guilty plea to one count of robbery, 18 Pa.C.S.A. § 3701(a)(1)(ii), graded as a felony of the first degree at docket number 15-CR-0003829-2014, and two counts of robbery, 18 Pa.C.S.A. § 3701(a)(1)(ii), also graded as felonies of the first degree, at docket number 15-CR-000858-2105.

In accordance with the terms of the plea bargain, the court sentenced Nieves on July 17, 2015 to ten to twenty years' imprisonment followed by ten years' probation. Nieves did not file post-sentence motions or a direct appeal.

On November 4, 2015, Nieves filed a timely PCRA petition. He alleged plea counsel was ineffective for failing to file a pretrial motion to suppress on various grounds, for "manipulating" him into entering a guilty plea, for failing to develop a strategy to support his claim of innocence, and for failing to file a post-sentence motion for modification. On November 6, 2015, the court appointed PCRA counsel for Nieves.

On January 27, 2016, PCRA counsel filed a petition to withdraw and a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc). On March 8, 2016, the court issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907(1). Nieves responded with a *pro se* letter to the court, claiming he had been diagnosed with ADHD and bipolar disorder as a child and, although he denied being on medication at the time of his plea, "the truth was" that he was on medication and could not "focus right" during the guilty plea colloquy. In response, the court conducted another independent review of the record and again determined there were no genuine issues concerning any material fact and that no relief was warranted. The court issued another Rule 907 notice of intent to dismiss.

On April 20, 2016, Nieves filed an "Emergency Motion for Enlargement of Time," seeking additional time to respond to the court's Rule 907 notice.

The court granted Nieves' motion in part, allowing him 60 days to respond. Nieves filed his response on June 20, 2016, again challenging plea counsel's effectiveness in suggesting that if he were convicted, Nieves, as a repeat felon, would be sentenced to a mandatory 30 to 60 years in prison, and that as a once-convicted felon, he would not be entitled to the presumption of innocence.

Nieves wrote a second letter to the court on July 19, 2016, claiming he was "not right mentally" when he tendered his plea due to his medicated status, and counsel had suggested that he not admit to being medicated at the colloquy. On July 22, 2016, the court entered an order directing PCRA counsel to review Nieves's Rule 907(1) response and his July 19, 2016 *pro se* letter, and to advise the court whether Nieves was entitled to an evidentiary hearing on whether plea counsel was ineffective for: (1) misadvising Nieves of the applicable law; (2) failing to file a pretrial motion to suppress; and (3) for counseling Nieves to plead guilty.

PCRA counsel complied and filed a letter to the court. Thereafter, following another independent review of the record in light of Nieves' supplemental claims and PCRA counsel's response, the court issued a final order on August 30, 2016 dismissing Nieves' PCRA petition and granting counsel's petition to withdraw. This *pro se* appeal followed.

Nieves raises the following issue for our review:

> Whether this *pro se* brief upon appeal from the PCRA court's August 30, 2016, final dismissal order merits redress is a question of exceptional circumstances and the law?

Appellant's Brief, at 2.

Essentially, Nieves is challenging the PCRA court's order dismissing his petition without a hearing to determine if his guilty plea was invalid due to plea counsel's ineffectiveness. We review such a decision for an abuse of discretion. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012).

A petitioner's right to an evidentiary hearing on a post-conviction petition is not absolute. "It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence." *Id.*, quoting *Commonwealth v. Turetsky*, 925 A.2d 876, 882 (Pa. Super. 2007) (internal citations omitted); *see also* Pa.R.Crim.P. 907. "The controlling factor . . . is the status of the substantive assertions in the petition. Thus, as to ineffectiveness claims in particular, if the record reflects that the underlying issue is of no arguable merit or no prejudice resulted, no evidentiary hearing is required." *Commonwealth v. Baumhammers*, 92 A.3d 708, 726–27 (Pa. 2014) (citations omitted).

Nieves has set forth a comprehensive argument in his *pro se* brief, outlining his claims of ineffectiveness of both plea counsel and appointed PCRA counsel. Nieves argues this Court should remand for a hearing to determine whether sufficient evidence exists of his "medically impaired mental status at the time of the negotiated plea deal," and whether plea counsel advised him that he would not be entitled to the presumption of innocence and would be subject to a mandatory 30-60 year sentence. Appellant's Brief, at 11, 15-17.

After our review of the parties' briefs, the record, and the relevant law, we agree with the PCRA court's determination that there were no genuine issues of material fact with respect to Nieves' claims of ineffectiveness. The record of the verbal guilty plea colloquy and the written guilty plea colloquy belies Nieves' claims that he was manipulated and coerced into entering a guilty plea. Nieves stated that he was a high school graduate, was not under the influence of "any drugs, alcohol or medicine," and that he did not suffer from any mental illness "or anything else that would cause [him] not to understand[.]" *See* N.T. Guilty Plea Colloquy, 7/17/15, at 3. He also stated that he understood that he was "presumed to be innocent[.]" *Id.* at 4. At the colloquy, Nieves admitted to the three gunpoint robberies, *id.* at 5, 7, and stated that he was satisfied with plea counsel's services. *Id.* at 10. *See also* Written Plea Colloquy, 7/17/15, at 6; Pa.R.Crim.P. 590.

"Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Pollard*, 832 A.2d 517, 522–23 (Pa. Super. 2003). The record clearly demonstrates that Nieves understood the nature of the charges against him, and therefore "the voluntariness of the plea is established." *Commonwealth v. Rush*, 909 A.2d 805, 808 (Pa. Super. 2006). "A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011).

With respect to his claim that plea counsel advised him to lie when the court asked whether he was medicated, and was ineffective in telling him he would not be entitled to the presumption of innocence due to a prior felony conviction, Nieves essentially asks this Court to accept that he perjured himself at the colloquy. As illustrated above, Nieves acknowledged that he was presumed innocent at the colloquy, and this was also affirmed in the written colloquy, which stated: "I am presumed innocent, and if the Commonwealth cannot prove me guilty beyond a reasonable doubt I must be set free on these charges." Written Guilty Plea Colloquy, 717/15, at 7. Nieves initialed that line, and signed his name at the bottom of the page. *Id.* at 7.

We conclude, therefore, that the PCRA court did not abuse its discretion in dismissing the petition without a hearing. ***Wah***, ***supra***. ***See Commonwealth v. Bryant***, 855 A.2d 726 (Pa. 2004) (PCRA court may deny petition without hearing if following review of petition it determines hearing would serve no purpose); ***see also*** Pa.R.Crim.P. 907(1). We affirm the PCRA court's order dismissing Nieves' petition without a hearing based on Judge Sarcione's opinion. The parties are directed to attach a copy of that opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/18

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

vs. : CHESTER COUNTY, PENNSYLVANIA

NOEL NIEVES : NOS. 15-CR-0000858-2015;
15-CR-0003829-2014

: CRIMINAL ACTION—PCRA

Nicholas J. Casenta, Jr., Esquire, Chief Deputy District Attorney, for the Commonwealth
Noel Nieves, Defendant, Pro Se

## OPINION *SUR* RULE 1925 (a)

Before the Court is Defendant Noel Nieves' timely appeal from our August 30, 2016 Order denying and dismissing his first PCRA Petition. Defendant filed his Notice of Appeal effective September 24, 2016, the date on which he attests in the Certificate of Service attached to his Notice that he placed his Notice of Appeal in the prison mail system, thereby satisfying the requirements of service under the Prisoner Mailbox Rule. *See Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. 1998)(discussing Prisoner Mailbox Rule). Defendant's Notice of Appeal was thus timely filed within the thirty (30) day period following the entry of this Court's final Order disposing of his PCRA Petition, as required by Pa. R.A.P. 903(a). *See* Pa. R.A.P. 903(a)("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."). Because Defendant appended to his Notice of Appeal a list of the issues of which he was complaining, we did not deem it necessary to order a Concise Statement pursuant to Pa. R.A.P. 1925(b). Having reviewed the issues Defendant has raised on appeal in light of the record and the relevant constitutional, statutory and decisional law,

~ 1 ~

we are now prepared to issue the following recommendation with respect to the merits of Defendant's appeal pursuant to Pa. R.A.P. 1925(a).

## I.   FACTUAL AND PROCEDURAL HISTORY

On July 15, 2015 Defendant tendered a counseled negotiated guilty plea to one (1) count of Robbery, 18 Pa. C.S.A. § 3701(a)(1)(ii) (Count 1), graded as a Felony of the First Degree (F-1), at docket number 15-CR-0003829-2014 and two (2) counts of Robbery, 18 Pa. C.S.A. § 3701(a)(1)(ii) (Counts 22 and 21, respectively), graded as Felonies of the First Degree (F-1's), at docket number 15-CR-0000858-2015. The factual basis recited in the Verbal Guilty Plea Colloquy set forth the following predicate for the plea.

> With regard to term number 3829 of 2014, on October 22nd of 2014, at approximately 9:50 p.m., the defendant went to the Shell station at 101 East Chestnut Street in Coatesville, Chester County, Pennsylvania where he made contact with employees, Michael Brown and Claude Edwards, C-L-A-U-D-E.
>
> The defendant approached wearing a mask, pointed what appeared to be a gun at them and stated both of you get back in the store. They walked back into the store. He ordered them to the ground and told Mr. Brown to open the safe. Mr. Brown told him he didn't have the key and told the defendant to take the money in the register and leave. The defendant told them to get on the ground again. And once on the ground, Mr. Brown said he was tased in the forehead. And then the defendant tased Mr. Edwards in the side.
>
> The defendant grabbed a drawer with approximately four hundred dollars in it and ran out the back of the store.
>
> . . .
>
> On 858 of '15, on October 15th of 2014 the defendant went to the Hair Cuttery at 3927 Lincoln Highway in Caln Township, Chester County, Pennsylvania at approximately 9:00 p.m.

~ 2 ~

And the defendant approached Ms. Brittany Daily, B-R-I-T-T-A-N-Y D-A-I-L-Y and Alliah Lacy, A-L-L-I-A-H L-A-C-Y, who were employees of the Hair Cuttery, with what appeared to be a black semi-automatic handgun which he pointed at them and said where is the money bag? The defendant punched Ms. Daily on the left side of her face. And they told him that the money was with another employee still in the store. The defendant then fled the area.

Also on that date and around the same time, the defendant went to the Pizza Hut located at 1809 Lincoln Highway also in Caln Township, Chester County, Pennsylvania. That is located approximately one and a half miles from the Hair Cuttery. The defendant went there and made contact with employees Michael Hashem, H-A-S-H-E-M and Elizabeth Cosella, C-O-S-E-L-L-A. Ms. Cosella was working at the cash register when the defendant approached and pointed what appeared to be a gun in her face while wearing a mask and a gray hoodie.

The defendant told her to give him the money, give him the money and punched her in the face, yelled at her to give him the money again. She opened the register drawer and gave the defendant all the cash inside of it, nine hundred — excuse me — three hundred ninety-six dollars from the delivery register.

THE COURT: He didn't get anything at the Hair Cuttery.

[THE PROSECUTOR]: Correct. The two employees he approached did not have the money. And he fled without entering the store in that instance.

(Verbal Guilty Plea Colloquy and Sentencing Hearing, 7/17/15, N.T. 4-7). Defendant admitted to committing these acts as outlined by the Commonwealth. (Verbal Guilty Plea Colloquy and Sentencing Hearing, 7/17/15, N.T. 5, 7; Written Guilty Plea Colloquy, 7/17/15, at 2, 5). Importantly to the instant proceedings, the following exchange occurred.

THE COURT: How did the police get to this fellow?

~ 3 ~

[THE PROSECUTOR]: There was a video at one of the stores, Judge, that showed, although the defendant's face was covered, there was a general description that was able to be provided. And he has a sleeve tattoo on his right arm that was exposed in some of the video footage. It has distinct patterning on it. The police, actually the county detectives ran a search in the database for someone who fit the rough description of the defendant, the description that was provided at the scene, who lived in the Downingtown area and who had a right arm tattoo and looked for a right arm tattoo that matched. And they found the defendant in the system. They found his tattoo. And they took it to a tattoo artist in the area who was able to confirm that based on the shading and comparison between the photo of the defendant and his tattoo and video footage, that was in fact the same tattoo.

[PLEA COUNSEL]: And then they got a warrant and went to the house and found incriminating evidence.

[THE PROSECUTOR]: That was the back end of it. That was how they originally –

THE COURT: They found the taser, [M]r. Jurs?

[PLEA COUNSEL]: No, a stun gun similar to that.

(Verbal Guilty Plea and Sentencing Hearing, 7/17/15, N.T. 8-9).

In accordance with the terms of Defendant's negotiated plea agreement, we sentenced Defendant on July 17, 2015 on Count 1, Robbery, at docket number 15-CR-0003829-2014 to serve a term of ten (10) to twenty (20) years' imprisonment in a State Correctional Facility. This sentence did not represent a mandatory minimum. At term number 15-CR-0000858-2015, we sentenced Defendant on July 17, 2015 to serve a term of ten (10) to twenty (20) years' imprisonment in a State Correctional Facility for the crime of Robbery at Count 22, to run concurrently with the sentence imposed at docket number 15-CR-0003829-2014. Again, this sentence did not represent a mandatory minimum. On Count 21, again a Robbery conviction, we sentenced Defendant to serve a term of

~ 4 ~

ten (10) years' probation, to run consecutively to the sentence imposed on Count 1 at docket number 15-CR-0003829-2014. Thus, Defendant's aggregate sentence is two (2) concurrent terms of ten (10) to twenty (20) years' imprisonment in a State Correctional Facility, followed by ten (10) years of consecutive probation. We gave Defendant credit for times served from October 23, 2014 to July 17, 2015. We ordered Defendant to pay the costs of prosecution and three (3) ten dollar ($10.00) fines. We directed Defendant to pay ten dollars ($10.00) in restitution to the Shell station and three hundred ninety-six dollars ($396.00) to the Pizza Hut. We directed that Defendant have no contact with any of the victims. Finally, we ordered him to provide a DNA sample and pay the requisite fee associated therewith and to submit to a drug and alcohol evaluation and follow all recommended treatment. Defendant was advised of his post-sentence rights, including his right to file a post-sentence motion within ten (10) days of sentencing, both orally on the record at the Verbal Guilty Plea and Sentencing Hearing and in writing in his Written Guilty Plea Colloquy. (Verbal Guilty Plea and Sentencing Hearing, 7/17/15, N.T. 19-21; Written Guilty Plea Colloquy, 7/17/15, at 8-9).

Defendant did not file a post-sentence motion or take a direct appeal. Consequently, for PCRA purposes, Defendant's Judgment of Sentence became final on August 16, 2015, thirty (30) days after the imposition of sentence without a post-sentence motion or direct appeal being filed. *See* 42 Pa. C.S.A. § 9545(b)(3)("For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review."); Pa. R.A.P. 903(a)("Except as otherwise prescribed by this rule, the notice of appeal required by Rule

~ 5 ~

902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken.").

On November 4, 2015, Defendant filed a timely PCRA Petition. Defendant's Petition referenced only docket number 15-CR-0003829-2014. In his Petition, Defendant claimed that his plea counsel was ineffective for failing to file a pre-trial motion to suppress evidence on the grounds of racial profiling, for failing to file a pre-trial motion to suppress challenging identification evidence, that his plea agreement was the product of manipulation and coercion by plea counsel, that plea counsel was ineffective for failing to develop a strategy to support Defendant's alleged claim of actual innocence, that plea counsel failed to file a requested post-sentence motion for modification, that his plea agreement was "the result of unethical behavior or activity" on the part of plea counsel, whom he alleged was "partial to the police" and "deliberately manipulated the [Defendant] into taking a Plea of Guilt[.]" Defendant attached to his Petition (1) a letter from plea counsel dated February 25, 2015 regarding various developments in Defendant's case, including plea counsel's filing of a Motion for Discovery, (2) a letter from plea counsel dated June 1, 2015, in which plea counsel represents that he "will be filing suppression motion [sic] regarding the search warrants in which we will ask the Judge to suppress all items seized from your residence and car[ ]", and (3) a letter from First Assistant Public Defender Nathan M. Schenker, Esquire dated August 17, 2015 indicating that Defendant's letter request for a motion for modification was received by his office on August 13, 2015, well beyond the period for filing a timely post-sentence motion. Mr. Schenker advised Defendant in this letter that due to his having entered a negotiated guilty plea, and having completing the lengthy and complex

~ 6 ~

process which that requires, there was essentially no basis for filing a motion for modification and that the time period for seeking such modification had already expired. Mr. Schenker advised Defendant in this letter that Defendant could proceed by filing a PCRA Petition within one (1) year of his date of sentence.

On November 6, 2015 we issued an Order, captioned only with docket number 15-CR-0003829-2014, appointing PCRA Counsel for Defendant. On January 27, 2016, PCRA Counsel filed a Petition to Withdraw as PCRA Counsel. On March 8, 2016, after conducting an independent review of the record, we determined that there were no genuine issues concerning any material fact and that PCRA relief was not warranted, and issued a Notice of Intent to Dismiss PCRA Petition Pursuant to Pa. R.Crim.P. 907(1).

On March 4, 2016 the Defendant wrote a *pro se* letter to the Court, which we received and filed with the Clerk of Courts on March 11, 2016, directing that Office to forward a copy of Defendant's March 4, 2016 to counsel. In his March 4, 2016 letter, Defendant protested his actual innocence, challenged the accuracy of the evidence used to identify him, claimed that there was exculpatory evidence that was not provided to the Court in the form of a cigarette butt found at the scene of the one of the Robberies which did not contain a match of his DNA, and stated that his plea counsel told him that if he did not plead he would be convicted and would face thirty (30) to sixty (60) years in prison and that he should just "take the deal" so that he will still be able to see his son, at which point Defendant stated that "i [sic] got scared and gave up on myself." (Deft.'s Letter, 3/4/16, at 1). Defendant also claimed that he was diagnosed with ADHD and Bi-Polar Disorder as a child and that, although he denied on the record at his guilty plea colloquy that he was on any medication, "the truth was" that he was on medication at the time of

~ 7 ~

his plea and was under distress and could not "focus right" during his guilty plea colloquy. (Deft.'s Letter, 3/4/16, at 1). Defendant wrote both docket numbers 15-CR-0003829-2014 and 15-CR-0000858-2015 on his March 4, 2016 letter.

On March 11, 2016, based on Defendant's March 4, 2016 letter, we issued an Order amending the caption of our November 4, 2015 Order to reflect both docket numbers and directing that Defendant's PCRA Petition shall be deemed to have been filed to both dockets effective November 4, 2015. Our March 11, 2016 Order also vacated our previous March 8, 2016 Rule 907(1) Notice, directed the Office of the Clerk of Courts of Chester County to forward a copy of Defendant's March 4, 2016 letter to counsel, and directed that PCRA Counsel review Defendant's March 4, 2016 letter and file, within forty-five (45) days of the Order, either an Amended PCRA Petition or a Petition for Leave to Withdraw as Counsel.

On March 17, 2016, PCRA Counsel filed a letter to the Court in which he advised the Court that his review of Defendant's PCRA Petition prior to the filing of his January 27, 2016 Petition for Leave to Withdraw as PCRA Counsel had encompassed both dockets already. Stating that he had addressed Petitioner's claims of actual innocence in his prior Petition for Leave to Withdraw as PCRA Counsel, PCRA Counsel addressed the issue concerning Defendant's medication by noting that at the Verbal Guilty Plea Colloquy Defendant had advised the Court that he did not suffer from mental illness and that he was not under the influence of any drugs or medications. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 3). PCRA Counsel requested that his January 27, 2016 Petition for Leave to Withdraw as PCRA Counsel be reinstated, that Defendant's first PCRA Petition be dismissed, and that he be allowed to withdraw from representation.

~ 8 ~

On April 1, 2016, after conducting another independent review of the record, we determined that there were no genuine issues concerning any material fact and that PCRA relief was not warranted, and issued a Notice of Intent to Dismiss PCRA Petition Pursuant to Pa. R.Crim.P. 907(1). In accordance with Pennsylvania Rule of Criminal Procedure 907(1), we gave Defendant twenty (20) days in which to respond to our Rule 907(1) Notice.

On April 20, 2016[1] Defendant filed an "Emergency Motion for Enlaregment [sic] of Time", seeking additional time in which to respond to our Rule 907(1) Notice. Specifically, Defendant requested one hundred and twenty (120) days in which to respond to our Rule 907(1) Notice. In his "Emergency Motion", Defendant also challenged the stewardship of PCRA Counsel. Defendant appended to his "Emergency Motion" another copy of the February 25, 2015 letter written by plea counsel and a letter by Defendant to PCRA Counsel dated April 6, 2016 in which Defendant claimed he was actually innocent of the crimes to which he pled, challenged the accuracy of the identification evidence against him, challenged plea counsel's stewardship for failure to call a particular witness by the name of "Charlie" in his favor, and raised allegations of defects in the execution of the search warrant at the Defendant's residence. Defendant also again claimed in this letter that a cigarette had been found at one of the crime scenes and his DNA had been tested and it was determined that there was no match. Defendant suggested that the negative results implied that he was excluded from the scene of the crime, thereby exculpating him, and his incarceration is therefore

---

[1] Defendant's Motion was received by the Clerk of Courts on April 25, 2016; however, the letter in which it was sent bore a postmark of April 20, 2016. Accordingly, under the Prisoner Mailbox Rule, we deemed Defendant's letter to have been filed on April 20, 2016. *See Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. 1998).

unconstitutional. He claims his plea counsel was aware of the DNA test results. Finally, Defendant stated that he was heavily medicated for ADHD and Bi-Polar Disorder at the time he entered his plea and that, as a result, his plea could not have been knowing, voluntary or intelligent. He also attached to his Motion two (2) pictures, one of which, according to his April 6, 2016 letter to PCRA Counsel, is a copy of surveillance video, and the other of which, again according to Defendant's April 6, 2016 letter to PCRA Counsel, is a picture of the Defendant's tattooed forearm. Defendant alleges that the County Detectives took the photograph on the day they executed the search warrant at his residence.

On May 10, 2016 we granted Defendant's Motion in part and denied it in part. We denied Defendant's request for one hundred and twenty (120) days in which to respond to our Rule 907(1) Notice, but gave him sixty (60) days from the April 21, 2016 expiration of his original twenty (20) day response period in which to file his Rule 907(1) response, making his response due on or before June 20, 2016.

On June 20, 2016, Defendant filed his Rule 907(1) Response. In his Rule 907(1) Response, Defendant again challenged the stewardship of PCRA Counsel, whom he claimed did not adequately investigate Defendant's issues, failed to remedy the defects in Defendant's PCRA Petition, and failed to adequately meet or speak with the Defendant to discuss the status of the Defendant's PCRA Petition. Defendant also claimed that his plea counsel coerced his plea by advising him (a) that his chances of an acquittal if he went to trial were "close to 0", (b) that Defendant, as a once convicted Felon, would not be entitled to the presumption of innocence, and (c) that, if convicted, Defendant would be sentenced under the "Repeated Offender Act" [sic] to a mandatory

~ 10 ~

thirty (30) to sixty (60) years in prison. Defendant claimed that his plea counsel was ineffective for failing to file a motion to suppress the evidence obtained as a result of the police execution of a search warrant at his residence on the grounds that the search was conducted in violation of the Fourth Amendment because the police only gave Defendant's wife, who is not the homeowner, according to the Defendant, a "quick look-glance" at the warrant after ordering Defendant and his family to vacate the premises and by conducting the search while Defendant, who claims to be the sole homeowner, was not present in the home. Defendant also claimed that his plea counsel induced him to lie, by means of "subliminal suggestion", about his mental health and medication status at the Verbal Guilty Plea Colloquy. Defendant claimed that his plea counsel, allegedly in violation of *Lafler v. Cooper*, 132 S.Ct. 1376 (U.S. Mich. 2012) and *Missouri v. Frye*, 132 S.Ct. 1399 (U.S. Mo. 2012), *cert. denied*, 132 S.Ct. 1789 (U.S. Mo. 2012), insisted that "[Defendant] and his family should not question or attempt to interfere with his methods for they know nothing of the legal ramifications at work and to simply rely upon his legal expertise because he ([plea counsel]), must do what's necessary to apiese [sic] both [Defendant] and the Commonwealth." (Deft.'s Rule 907(1) Response, 6/20/16, at 3, para. "A"). Defendant claimed that his plea counsel failed to develop an informed opinion about the course of action Defendant should pursue in this matter, as allegedly required by *Von Moltke v. Gillies*, 68 S.Ct. 316 (U.S. Mich. 1948). Finally, Defendant claimed that plea counsel failed to inform him of his basic sentencing liabilities and other considerations so as to enable Defendant to make an informed decision about whether to accept or reject the Commonwealth's plea offer. Defendant requested that the undersigned to allow further PCRA proceedings, appoint new PCRA Counsel, and vacate

~ 11 ~

Defendant's conviction and sentence pending the resolution of whether Defendant's plea was voluntary and "free from the influence of powerful narcotics". (Deft.'s Rule 907(1) Response, 6/20/16, at 5).

On July 18, 2016 Defendant wrote a *pro se* letter to the Court, which we received and filed with the Clerk of Courts on July 22, 2016. In his *pro se* letter, Defendant claimed that he was "not right mentally" when he tendered his plea because he was on medication and that his plea counsel knew he was on medication and told him not to admit it in order to "falsly [sic] convinc[e] [him] to perjur [sic]" himself. Defendant requested a copy of his prison medical records and other discovery in order to show that his plea was not knowingly, voluntarily and intelligently entered. He attached to his letter a "Letter in Application" addressed to the "official court reporter/Court stenographer" seated For The Honorable Anthony A. Sarcione" in which he set forth under the title "Requisition" all of the items of discovery he wished to have provided to him.

On July 22, 2016, we issued two Orders. One Order was issued in response to Defendant's request in his July 18, 2016 *pro se* letter for free copies of his court records and transcripts. We denied Defendant's request, noting that so long as the Defendant's attorney had access to the requested items, Defendant's right to free copies of these items was satisfied. *Sullivan v. Sokolski*, 1994 WL 105526 (E.D. Pa. 1994), *aff'd*, 40 F.3d 1241 (3rd Cir. Pa. 1994); *Gay v. Watkins*, 579 F. Supp. 1019 (E.D. Pa. 1984). As Defendant indicated in his *pro se* letter that he was making this request in order to demonstrate that his guilty plea could not have been knowingly, voluntarily and intelligently entered due to the alleged medicated status at the time he entered his plea, we also added that Defendant's argument had no merit because of the long-standing rule

~ 12 ~

in Pennsylvania that a defendant may not challenge his guilty plea by asserting that he lied under oath, even if he avers that his counsel induced the lies. *See Commonwealth v. Yeomans*, 24 A.3d 1044 (Pa. Super. 2011), *reargument denied* (August 18, 2011). We then quoted from that portion of the Verbal Guilty Plea transcript which demonstrates that Defendant advised the Court during his Verbal Guilty Plea that he was not under the influence of any drugs, alcohol or medicine. (*See* Guilty Plea and Sentencing Transcript, 7/17/15, N.T. 3).

Our second Order dated July 22, 2016 directed PCRA Counsel to review Defendant's Rule 907(1) Response and his *pro se* July 18, 2016 letter and advise the Court in writing within thirty (30) days of the date of the Order whether Defendant was entitled to an evidentiary hearing on the following issues: (a) whether plea counsel misadvised the Defendant of the applicable law; (b) whether plea counsel was ineffective for failing to file a pretrial suppression motion; and (c) whether plea counsel was ineffective for counseling Defendant to plead guilty.

On August 22, 2016 PCRA Counsel filed a letter to the Court addressing the three (3) issues we directed him to review in our July 22, 2016 Order. PCRA Counsel attached a letter from plea counsel in which plea counsel denied ever telling the Defendant that he would not be entitled to the presumption of innocence, asserted that he reviewed the search warrant executed by the police on Defendant's property and found no issues that would warrant relief by the Court, and explained his reasons for advising Defendant to accept the Commonwealth's plea offer.

After conducting another independent review of the record in light of all of the issues raised by the Defendant in his Petition and supplemental filings and all of the

~ 13 ~

analyses by PCRA Counsel, including the letter from plea counsel attached to his final recommendation, we issued a final Order dismissing the Defendant's first PCRA Petition on August 30, 2016.

On September 24, 2016 the Defendant placed his Notice of Appeal in the prison mail system, thereby satisfying the requirements of Pa. R.A.P. 903(a) pursuant to the Prisoner Mailbox Rule. *See Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. 1998)(regarding Prisoner Mailbox Rule). Attached to his Notice of Appeal, Defendant appended a statement of the issues he wished to raise on appeal. Because Defendant filed this statement of his claims, we did not request a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).

In his Statement, Defendant raised the following issues. Defendant claimed that PCRA Counsel abandoned him and failed to conduct an adequate investigation, which he suggests would have had to include a personal meeting or conference with the Defendant, into Defendant's PCRA claims, including Defendant's claim that he was actually innocent of the crimes to which he pled and that his plea was not knowingly, voluntarily or intelligently entered due to his alleged medicated status and due to plea counsel's alleged manipulative and coercive tactics. Defendant claimed that plea counsel violated *Lafler v. Cooper*, 132 S.Ct. 1376 (U.S. Mich. 2012) and *Missouri v. Frye*, 132 S.Ct. 1399 (U.S. Mo. 2012), *cert. denied*, 132 S.Ct. 1789 (U.S. Mo. 2012) by insisting that Defendant and his family "not question or attempt to interfere with his methods for they know nothing of legal ramifications at work and to simply rely upon his legal expertise because he ([plea counsel]), must do what's necessary to apiese [sic] both [Defendant] and the Commonwelath." (Deft.'s Statement, 9/24/16, at 4, para. 5).

~ 14 ~

Defendant claimed that he was deprived of the effective assistance of counsel during the pretrial and plea bargaining phases of his prosecution and that plea counsel compelled Defendant's plea without Defendant's understanding and consent, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9 and 14 of the Pennsylvania Constitution. Finally, Defendant claimed that his plea counsel violated *Von Moltke v. Gillies*, 68 S.Ct. 316 (U.S. Mich. 1948) by failing "to get an opinion with the specifity [sic] and explicitness that the standards require, counsel also failed to educate [Defendant] about his basic sentencing liabilities." (Deft.'s Statement, 9/24/16, at 5). In essence, as near as we can decipher, Defendant claim is that plea counsel did not offer him adequate advice with respect to his options of going to trial or taking a plea and did not advise Defendant about his sentencing exposure under the Statewide Sentencing Guidelines.

Having reviewed the record in light of the relevant constitutional, statutory and decisional law, we are now prepared to issue the following recommendations with regard to the merits of Defendant's PCRA appeal.

## II.    DISCUSSION

### A. Claims raised in November 4, 2011 PCRA Petition

We will begin our analysis with the claims Defendant raised in his November 4, 2011 PCRA Petition.

Concerning Defendant's claim that plea counsel was ineffective for failing to file a pre-trial motion to suppress, whether on the grounds of racial profiling or improperly obtained evidence, including identification evidence, Defendant waived his right to file pre-trial motions by tendering a negotiated guilty plea. *See Commonwealth v. Reichle*,

~ 15 ~

589 A.2d 1140 (Pa. Super. 1991)(generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the plea). In his Written Guilty Plea Colloquy, Defendant acknowledged that he was waiving his right to file pre-trial motions as a result of tendering his plea. In paragraph 20 of Defendant's Written Guilty Plea Colloquy, Defendant acknowledged the following.

> If I went to trial, I would have the right to file motions asking the Court for many different kinds of relief. Some of these would be motions to quash or dismiss the charges against me for lack of evidence or for procedural defects; to suppress the use of evidence against me because it was obtained unconstitutionally, as for instance by improper questioning or an illegal search and seizure; and to ask that evidence be suppressed because it was improperly obtained, such as identification testimony. There could be other motions, also. If I file such pre-trial applications, a Judge will have to rule on them before the case could go to trial. *I am willing to give up these rights.*

(Written Guilty Plea Colloquy, 7/17/15, at 6, para. 20)(emphasis added). Defendant signed his initials on the line to the bottom right of this paragraph and signed his name on the line at the bottom of the page immediately below this paragraph. (Written Guilty Plea Colloquy, 7/17/15, N.T. 6). Defendant acknowledged and agreed to the waiver of his right to file pre-trial motions in exchange for the tender of his guilty plea. There is no substantive merit to Defendant's claim. *See Commonwealth v. Williams*, 899 A.2d 1060 (Pa. 2006)(regarding three (3) prong test for ineffective assistance of counsel).

With respect to Defendant's claim that counsel was ineffective for coercing and manipulating him into accepting the Commonwealth's plea offer, the Verbal and Written Guilty Plea Colloquies belie the veracity of his claim. At the Verbal Guilty Plea

~ 16 ~

Colloquy, the Court asked the Defendant, "Has anyone threatened or forced you to plead guilty?", to which Defendant responded, "No, sir." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11). The Court then asked the Defendant, "Other than the promise contained in the plea agreement, has anyone promised you anything else to induce you to plead guilty?", to which the Defendant responded, "No." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11). In the Written Guilty Plea Colloquy, Defendant signed his initials[2] on the line provided to the right of the following statements.

### VOLUNTARINESS OF PLEA:

I agree that:

17. No one has used any force or threats against me in order to get me to enter this plea of guilty. [/s/] NN

18. No promises have been made to me in order to get me to enter this plea other than what is set forth in the plea bargain agreement, if any, on page 3 and 4 of this guilty plea form.
[/s/] NN

(Written Guilty Plea Colloquy, 7/17/15, at 6). Defendant also signed his name on the line provided at the bottom of the page containing these two paragraphs. (Written Guilty Plea Colloquy, 7/17/15, at 6). Further, in the Verbal Guilty Plea Colloquy, the Court asked the

---

[2] This Court asked Defendant on the record at the Verbal Guilty Plea Colloquy, "Did you sign and initial the guilty plea colloquy?", to which Defendant responded, "Yes, I have." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11). We followed up by asking Defendant, "Did you review it with Mr. Jurs [plea counsel] before you signed and initialed it?" (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11). Defendant again responded, "Yes." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11). The end of the Written Guilty Plea Colloquy also contains an attestation which reads:

I AFFIRM THAT I HAVE RED THE ABOVE DOCUMENT IN ITS ENTIRETY AND I UNDERSTAND ITS FULL MEANING, AND I AM STILL, NEVERTHELESS, WILLING TO ENTER A PLEA OF GUILTY TO THE OFEFNSES SPECIFIED. I FURTHER AFFIRM THAT MY SIGNATURE AND INITALS ON EACH PAGE OF THIS DOCUMENT ARE TRUE AND CORRECT.

(Written Guilty Plea Colloquy, 7/17/15, at 9). Defendant signed his name on the line provided below and to the right of this paragraph. (Written Guilty Plea Colloquy, 7/17/15, at 9).

~ 17 ~

Defendant, "Have you had time to discuss your case and go over things with Mr. Jurs [plea counsel]?". (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 10). Defendant replied, "Yes, I have." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 10). The Court then asked, "Are you satisfied with his services?", to which Defendant replied, "Yes." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 10). Finally, in the Written Guilty Plea Colloquy, Defendant was asked, "Do you understand the charges against you?" (Written Guilty Plea Colloquy, 7/17/15, at 6, para. 15). Defendant wrote on the line to the right of this question, "Yes" and placed his initials on the line immediately below his response. (Written Guilty Plea Colloquy, 7/17/15, at 6, para. 15). The Written Guilty Plea Colloquy then asked the Defendant, "Are you able to work with your lawyer in responding to those charges?", to which Defendant wrote "Yes" on the line to the right of the question and placed his initials on the line immediately below his response. (Written Guilty Plea Colloquy, 7/17/15, N.T. 6, para. 16). At the end of the Written Guilty Plea Colloquy, the Written Guilty Plea Colloquy contained the following paragraphs.

TO MY LAWYER:

39. I have had enough time to discuss these charges with my lawyer, and I am satisfied with the advice that he has given me, and with his representation of me before this Court.
[/s/] NN

40. I have gone over this document with my attorney, and he has explained it to me and answered any questions I have concerning it.
[/s/] NN

41. I further agree that, although I have been assisted by my attorney, it is my own decision to enter the plea that I [am] making here today.
[/s/] NN

(Written Guilty Plea Colloquy, 7/17/15, at 9, paras. 39-41). Defendant signed his initials on the lines provided to the right of each paragraph, and signed the affirmation below acknowledging that

> I AFFIRM THAT I HAVE READ THE ABOVE DOCUMENT IN ITS ENTIRETY AND I UNDERSTAND ITS FULL MEANING, AND I AM STILL, NEVERTHELESS, WILLING TO ENTER A PLEA OF GUILTY TO THE OFFENSES SPECIFIED. I FURTHER AFFIRM THAT MY SIGNATURE AND INITIALS ON EACH PAGE OF THIS DOCUMENT ARE TRUE AND CORRECT.

(Written Guilty Plea Colloquy, 7/17/15, at 9). Defendant's claim that he was coerced and manipulated into entering his plea is contrary to his verbal and written averments at the Guilty Plea Colloquy. A defendant may not challenge his guilty plea by asserting that he lied to the Court under oath. *Commonwealth v. Yeomans*, 24 A.3d 1044 (Pa. Super. 2011), *reargument denied* (August 18, 2011). Defendant's claim that his counsel coerced and manipulated him into pleading guilty has no substantive merit.

With respect to Defendant's claim that plea counsel was ineffective for failing to develop a strategy to support Defendant's alleged claim of actual innocence, again we note that Defendant pled guilty. Defendant admitted on the record in open court that he committed the crimes that were the subject of the plea bargain. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 5, 7-8). He acknowledged in writing on the Written Guilty Plea Colloquy that "I admit committing the crimes to which I am pleading guilty" and "I acknowledge that the facts occurred as set forth on page 2 of this form." (Written Guilty Plea Colloquy, 7/17/15, at 5). He signed each and every page of the Written Guilty Plea Colloquy, including the pages setting forth the offenses and the factual basis for the plea and placed his initials next to every numbered paragraph.



(Written Guilty Plea Colloquy, 7/17/15, at 1-9; Guilty Plea and Sentencing Transcript, 7/17/15, N.T. 11). Never once did Defendant protest or even suggest in any way that he was innocent of the crimes to which he was pleading.

Further, as plea counsel noted in his letter to PCRA Counsel, the evidence against the Defendant was strong. There was video surveillance footage of the crimes showing the perpetrator to have the same distinctive tattoo that Defendant has on his right arm, eyewitness descriptions from the victims, and, at his home, according to the Search Warrant Receipts/Inventories, Detectives found a cash register drawer, a stun gun, $427.00 in U.S. currency, various weapons and a pair of size 9 Timberland shoes. Defendant has a prior conviction for Robbery, for which he was sentenced to four (4) to eight (8) years in a State penitentiary and for which he was on State Parole at the time these crimes were committed. Defense counsel did not develop a strategy to support Defendant's alleged claim of actual innocence because Defendant never made such a claim. Defendant's post-sentence attempt to raise such a claim now rings hollow in light of his admissions during the negotiated guilty plea colloquy, the strength of the Commonwealth's case, and his prior record.

"A guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt." *Commonwealth v. Watson*, 835 A.2d 786 (Pa. Super. 2003). Further,

> A defendant may plead guilty for any reason: to shield others, avoid further exposure, to diminish the penalty, to be done with the matter, or any secret reason that appeals to his needs. What is generally and most objectively accepted is that a plea is offered to relieve conscience, to set the record straight and, as earnest of error and repentance, to accept the penalty.

~ 20 ~

*Commonwealth v. Watson*, 835 A.2d 786 (Pa. Super. 2003). Defendant's belated attempt to suggest that he is actually innocent of the crimes to which he pled after extensive record oral and written colloquy is belied by the evidence. His attempt to cast aspersions upon counsel for failing to "develop a strategy" to support this spurious claim is without merit.

Turning to Defendant's claim that plea counsel was ineffective for failing to file a post-sentence motion for modification, we note, as did First Assistant Public Defender Nathan M. Schenker, Esquire in his August 17, 2015 letter to the Defendant, that Defendant's request was not received by the Office of the Public Defender of Chester County until August 13, 2015, well after the expiration of the ten (10) day period provided by the Rules of Criminal Procedure for filing post-sentence motions. *See* Pa. R.Crim.P. 720(A)(1)("[A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence."). (*See also* Verbal Guilty Plea Colloquy, 7/17/15, N.T. 20 ["You also have the right to file with this Court, within ten days of today in writing, a post-sentence motion."]; Written Guilty Plea Colloquy, 7/17/15, at 8, para. 34 ["I have ten (10) days from the date I am sentenced within which to file optional motions with this Court for post-sentence relief[.]"]). Further, Defendant tendered a negotiated guilty plea. This Court is unable to modify the terms of a negotiated plea at the unilateral request of either party. *Commonwealth v. Coles*, 530 A.2d 453 (Pa. Super. 1987), *appeal denied*, 559 A.2d 34 (Pa. 1989). Therefore, a post-sentence motion for modification would have been frivolous. Counsel cannot be deemed ineffective for failing to file a frivolous motion.

*Commonwealth v. Vesay*, 464 A.2d 1363 (Pa. Super. 1983). Defendant's claim of ineffective assistance of counsel has no substantive merit.

With respect to Defendant's claim that his plea agreement was "the result of unethical behavior or activity" on the part of plea counsel, whom he alleged was "partial to the police" and "deliberately manipulated the [Defendant] into taking a Plea of Guilt" (*see* Deft.'s PCRA Petition, 11/4/15, at 12, para. 2), we have already demonstrated above, by Defendant's own admissions during the Verbal Guilty Plea Colloquy and in writing in the Written Guilty Plea Colloquy, that counsel did not manipulate Defendant into tendering a plea. Thus, Defendant's claim that his counsel's alleged manipulation of Defendant constitutes "unethical behavior or activity" on behalf of an attorney who is a partisan of the police department has no substantive merit. To the extent that Defendant's allegations against plea counsel, a well-respected member of the Chester County Public Defender's Office, of "unethical behavior or activity" and/or "partial[ity] to the police" relate to some other unidentified conduct on the part of counsel, they constitute undeveloped, generalized, boilerplate attacks upon the integrity of counsel without any factual substantiation. As such, they do not support a claim for PCRA relief. *Commonwealth v. Natividad*, 938 A.2d 310 (Pa. 2007)(a petitioner under the PCRA must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness).

For all of the foregoing reasons, the issues Defendant raised in his November 4, 2015 PCRA Petition have no merit and will not support a claim for PCRA relief.

## B. Claims raised in March 4, 2016 Letter

The first claim Defendant raised in his March 4, 2016 *pro se* letter to the Court is that he is actually innocent of the crimes to which he pled on July 17, 2015. We have already addressed the merits of this claim above. We would respectfully incorporate herein by reference and refer this Honorable reader to that portion of our Opinion above that explains the reasons why we conclude that Defendant's assertion that he is actually innocent of these crimes has no merit and does not warrant PCRA relief.

Defendant's second claim repeats his challenging to the accuracy of the identification evidence against him. Again, as we noted above, Defendant waived his right to challenge the identification evidence against him by tendering a negotiated plea. *See Commonwealth v. Reichle*, 589 A.2d 1140 (Pa. Super. 1991)(generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the plea). (*See also* Written Guilty Plea Colloquy, 7/17/15, at 6, para. 20). We would respectfully incorporate herein by reference and refer this Honorable reader to that portion of our Opinion above which addresses Defendant's waiver of his right to file pre-trial motions. We respectfully recommend for the reasons aforestated that Defendant's claim has no merit and does not warrant PCRA relief.

The third issue Defendant raised in his March 4, 2016 *pro se* letter to the Court is that there is exculpatory evidence in this case that was not presented to the Court. This letter must be read in conjunction with the allegations he raised in his April 6, 2016 letter to PCRA Counsel that was appended to his April 20, 2016 motion for an extension of time in which to file is Rule 907(1) Response. Therein, Defendant

~ 23 ~

delineates the basis of his claim. He claims that a cigarette butt was recovered from the scene of one of the crimes. He states that Detectives swabbed his mouth for DNA and tested the results. He states that the results came back negative. Defendant claims that this means he could not have been the perpetrator of the robberies. Defendant claims that his plea counsel knew the results of the DNA test "after the Chester County Detectives retrieved a warrant for the DNA swab." (Deft.'s Emergency Motion for Enlaregment [sic] of Time, 4/20/16, Attached Letter to PCRA Counsel dated April 6, 2016, at 2). Importantly, Defendant is not claiming that the Commonwealth withheld exculpatory evidence from him.

Defendant is mistaken about the exculpatory value of the evidence he describes. At best, the lack of a match between his DNA and the DNA on the cigarette butt means that he probably did not smoke that particular cigarette. It does not mean he did not commit any of the three (3) armed robberies to which he pled. The factual predicate for these crimes do not include descriptions of the perpetrator smoking a cigarette. The evidence Defendant claims exonerates him is not exculpatory. Had his DNA been found on the cigarette, that would have made the Commonwealth's case even stronger, which is probably why his DNA was tested. However, the fact that his DNA was not found on the cigarette butt does nothing to exonerate him from the commission of these crimes.

Further, as we already stated, Defendant tendered a negotiated guilty plea.

A guilty plea is an acknowledgement by a defendant that he participated in the commission of certain acts with a criminal intent. He acknowledges the existence of the facts and the intent. The facts that he acknowledges may or may not be within the powers of the Commonwealth to prove. However,

~ 24 ~

the plea of guilt admits that the facts and intent occurred, and is a confession not only of what the Commonwealth might prove, but also as to what the defendant knows to have happened.

. . .

A guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. If a defendant voluntarily, knowingly, and intelligently wishes to acknowledge facts that in themselves constitute an offense, that acknowledgement is independent of the procedures of proving or refuting them. How they would be proved, what burdens accompany their proof, what privileges exist to avoid their proof, what safeguards exist to determine their accuracy, and under what rules they would be determined, by whom and how, are irrelevant. The defendant is before the court to acknowledge facts that he is instructed constitute a crime. He is not there to gauge the likelihood of their proof, nor to weigh them in the light of the available procedures for their proof. He is there to voluntarily say what he knows occurred, whether the Commonwealth would prove them or not, and that he will accept their legal meaning and their legal consequences.

*Commonwealth v. Watson*, 835 A.2d 786, 796-97 (Pa. Super. 2003)(emphasis omitted). Defendant admitted that he committed the crimes which were the subject of the plea colloquy. His plea was knowingly, voluntarily and intelligently entered. Assuming for purposes of argument that the cigarette butt evidence was exculpatory, Defendant never mentioned the existence of the cigarette butt, the DNA test, or the lack of a match in the results to the Court. He did not assert his innocence in any way.

Because the lack of a DNA match on the cigarette butt is not exculpatory, and because Defendant tendered a knowing, voluntary and intelligent plea, we respectfully submit that the third issue Defendant raised in his March 4, 2016 *pro se* letter to the Court has no merit and does not warrant PCRA relief.

~ 25 ~

The fourth issue Defendant raised in his March 4, 2016 *pro se* letter to the Court claims that counsel was ineffective for advising Defendant that if he did not plead he would be convicted and face thirty (30) to sixty (60) years in prison and that he should just "take the deal" so that he will still be able to see his son. Defendant claims that as a result of this advice, he "got scared" and "gave up" on himself and accepted the plea because he felt like no one was "on [his] side" in spite of all of the evidence that he alleged demonstrates his actual innocence. (Deft.'s Letter to the Court, ¾/16, at 1). Defendant's claims have no merit.

Plea counsel was not ineffective for advising the Defendant that if he went to trial, it was likely that he would be convicted. The Commonwealth's case was strong. Plea counsel has a duty to advise Defendant of his options, including the likelihood of his success if he chooses to go to trial. Plea counsel was not ineffective for giving the Defendant his professional opinion in this regard. His advice to Defendant was not outside the parameters of that which is expected of attorneys practicing criminal law. See *Commonwealth v. Wah*, 42 A.3d 335 (Pa. Super. 2012)(where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases).

With respect to the amount of time plea counsel advised Defendant he could face, plea counsel's advice was likewise accurate. Indeed, the Court advised the Defendant on the record in the Verbal Guilty Plea Colloquy that the maximum sentence he could receive on each offense to which he was tendering his plea was twenty (20) years in prison. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 12). The Court stated, "If you

~ 26 ~

were maxed out, you could receive sixty years in prison and seventy-five thousand dollars in fines." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 12). Defendant's Prior Record Score is RVOC. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 13). Further, the first and second pages of Defendant's Written Guilty Plea Colloquy set forth the maximum penalties Defendant faced if he went to trial and was convicted on each of the crimes to which he pled. (Written Guilty Plea Colloquy, 7/17/15, at 1-2). The Written Guilty Plea correctly identified these maximum penalties as twenty (20) years' confinement per Robbery, with maximum fines of $25,000.00 each as well. *See* 18 Pa. C.S.A. § 1103(1)(Sentence of imprisonment for Felony of the First Degree). The maximums recited were only for the offenses to which Defendant tendered his plea. Defendant was charged in the Informations at both dockets with many, many more offenses than the three (3) Robberies to which he pled. Plea counsel has a duty to advise Defendant of his exposure in the event he chooses to go to trial and is convicted. There was nothing inaccurate, misleading, coercive or manipulative about plea counsel's advice to the Defendant that if he were convicted on the three offenses to which he was being asked to plead alone he would face thirty (30) to sixty (60) years in prison. It is a fact that on those three (3) Robberies alone, Defendant could have received that much time in prison. It is certainly understandable that Defendant might become "scared" and decide that accepting the Commonwealth's plea offer for two concurrent terms of ten (10) years in prison followed by a ten (10) year probationary tail would be preferable to spending thirty (30) years in prison, particularly in light of the strength of the Commonwealth's case. It is also understandable that a desire to see his son grow up might influence his decision concerning the advantages of taking the plea. *See Commonwealth v. Watson*, 835 A.2d

~ 27 ~

786 (Pa. Super. 2003)("A defendant may plead guilty for any reason: to shield others, avoid further exposure, to diminish the penalty, to be done with the matter, or any secret reason that appeals to his needs."). However, that does not make counsel's performance deficient. Counsel was not ineffective in any way for advising Defendant that he faced thirty (30) to sixty (60) years in prison if he went to trial on the charges for which the Commonwealth was seeking the plea, or for pointing out to Defendant, if indeed he did so, that a sentence of ten (10) years in prison would be more beneficial to him in terms of his ability to parent his son than would a sentence of at least thirty (30) consecutive years' incarceration. Counsel has a duty to advise Defendant of the advantages and disadvantages of his respective options. As Defendant acknowledged in his Written Guilty Plea Colloquy, "I further agree that, although I have been assisted by my attorney, it is my own decision to enter the plea that I [am] making here today." (Written Guilty Plea Colloquy, 7/17/15, at 9, para. 41). Defendant's fourth claim of ineffective assistance of counsel has no substantive merit and will not support a claim for PCRA relief.

Finally, in Defendant's March 4, 2016 *pro se* letter to the Court, Defendant claimed that his guilty plea was not knowingly, voluntarily or intelligently entered because, contrary to what he advised the Court on the record at the Verbal Guilty Plea Colloquy, he was on medication that impaired his ability to understand what he was doing and to make rational judgments. This contention has no merit. The record reflects that during the Verbal Guilty Plea Colloquy, the following exchange took place.

> THE COURT: And are you presently under the influence of any drugs, alcohol or medicine?
>
> NOEL NIEVES: No.

~ 28 ~

THE COURT: And do you suffer from any mental illness or anything else that would cause you not to understand me?

NOEL NIEVES: No.

(Verbal Guilty Plea Colloquy, 7/17/15, N.T. 3). Defendant claims that he lied at the Verbal Guilty Plea Colloquy at the instruction of plea counsel. As we pointed out in our July 22, 2016 Order issued in response to his July 18, 2016 letter requesting free copies of his transcripts and court records to prove that his plea was not voluntary due to his having been under the influence of mind-altering medication, "the longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied under oath, even if he avers that his counsel induced the lies." (Order, 7/22/16, at 1)(Sarcione, J.)(*citing Commonwealth v. Yeomans*, 24 A.3d 1044 (Pa. Super. 2011), *reargument denied* (August 18, 2011)). Further, this Court had the opportunity to observe and speak with the Defendant on the record during the Guilty Plea Colloquy and there was nothing about the Defendant's demeanor or responses that suggested to the Court that his cognition was impaired in any way. The final claim Defendant raised in his March 4, 2016 *pro se* letter to the Court has no merit and, like the others, will not support a claim for PCRA relief.

C. Claims raised in April 20, 2016 "Emergency Motion for Enlaregment [sic] of Time"

The first claim Defendant raised in his Emergency Motion for Enlar[ge]ment of Time, which he mailed to the Court on April 20, 2016, aside from his request for an extension of time in which to file his Rule 907(1) Response, which was granted, albeit not for the full amount of time that the Defendant requested, is that PCRA Counsel's stewardship of his PCRA Petition was deficient in that PCRA Counsel failed to

adequately investigate Defendant's claims or to meet or speak personally with the Defendant "to discuss the status of Defendant's guilty plea colloquy." (Deft.'s Emergency Motion, 4/20/16, at 1). As we have already demonstrated, none of the issues Defendant raised heretofore have any substantive merit. PCRA Counsel's conclusion in his January 27, 2016 Petition for Leave to Withdraw, as supplemented by his March 17, 2016 letter, that Defendant's PCRA claims have no merit is supported by the facts of record and relevant law and there is no basis upon which to impugn PCRA counsel's stewardship as of April 20, 2016.

The remainder of the issues raised in Defendant's April 20, 2016 "Emergency Motion for Enlar[ge]ment of Time" are found in the letter he wrote to counsel dated April 6, 2016 which he appended to his Emergency Motion. Therein, Defendant reiterates his claim of actual innocence, his challenge to the accuracy of the identification evidence against him, repeated his challenge to the alleged defects in the execution of the search warrants issued for his residence, renewed his claim concerning the cigarette butt, and again asserted that his plea was not knowingly, voluntarily or intelligently entered because he was heavily medicated at the time he was colloquized. We have addressed all of these issues above and would respectfully incorporate herein by reference and refer this Honorable reader to those portions of our present Opinion that address these matters above.

The only new claim Defendant raised was a challenge to the effectiveness of plea counsel for plea counsel's alleged failure to call a witness Defendant only identifies as "Charlie" who, according to the Defendant, would have established an alibi for the Defendant for the October 15, 2014 Robberies. Defendant attached to his Motion the

~ 30 ~

letter written to him by plea counsel on February 25, 2015 indicating that plea counsel spoke to "Charles" and that "[i]t was a favorable discussion, but I would prefer to talk about it in person rather than by letter." (Letter from Peter Jurs, Esq. to Defendant dated February 25, 2015, at 1). Plea counsel's letter does not indicate that Charles/Charlie was consulted about an alibi nor does it state, as Defendant suggests, that plea counsel represented to Defendant that he intended to call Charles/Charlie to "prove [Defendant's] innocence" at trial. (*See* Deft.'s Letter to PCRA Counsel dated April 6, 2016 at para. 2). Indeed, in plea counsel's subsequent letter to PCRA Counsel dated August 15, 2016, plea counsel stated, "[T]here were no viable defenses." (*See* PCRA Counsel's Letter to Court dated August 16, 2016, attached Letter from Plea Counsel dated August 15, 2016 at 1). Notwithstanding plea counsel's apparent awareness of "Charles/Charlie" or the dubious relevance of this witness to Defendant's case in light of plea counsel's August 15, 2016 letter, Defendant's argument overlooks the fact that he elected to plead guilty, admitting to the facts of the crimes and the criminal intent, and declining to advance any alibi defense against the charges to which he pled. As we stated earlier,

> A defendant may plead guilty for any reason: to shield others, avoid further exposure, to diminish the penalty, to be done with the matter, or any secret reason that appeals to his needs. What is generally and most objectively accepted is that a plea is offered to relieve conscience, to set the record straight and, as earnest of error and repentance, to accept the penalty.

*Commonwealth v. Watson*, 835 A.2d 786 (Pa. Super. 2003). By pleading guilty as part of a negotiated agreement with the Commonwealth, Defendant opted to accept responsibility for the crimes charged and obviated the need for counsel to call witnesses or advance an inconsistent alibi defense on his behalf. *See Commonwealth v. Casner*,

~ 31 ~

461 A.2d 324 (Pa. Super. 1983)(no ineffective assistance of counsel for failure to investigate possible alibi witnesses where plea counsel testifies that defendant never told him he was innocent but instead "virtually admitted the crime and said he would plead.") Here, plea counsel did take steps to investigate the potential alibi, but as his letter to PCRA Counsel dated August 15, 2016 indicates, plea counsel ultimately determined that no viable alibi defense existed. Moreover, Defendant has not alleged, and none of his "exhibits" establish, that this proposed witness would have been available or willing to testify on his behalf at any trial. *See Commonwealth v. Pander*, 100 A.3d 626 (Pa. Super. 2014), *appeal denied*, 109 A.3d 679 (Pa. 2015)(elements of test for ineffective assistance of counsel with respect to claim that counsel failed to investigate or call a witness). For all of these reasons, we conclude that Defendant's claim that plea counsel was ineffective for failing to investigate or call an alibi witness has no merit and will not support a claim for PCRA relief.

Because none of the claims Defendant incorporated into his "Emergency Motion for Enlaregment [sic] of Time" have any merit, Defendant is not entitled to PCRA relief.

### D. Claims raised in June 20, 2016 Rule 907(1) Response

The first claim Defendant raised in his June 20, 2016 Rule 907(1) Response is that PCRA Counsel's stewardship was deficient in that PCRA Counsel failed to adequately investigate Defendant's issues, failed to remedy the defects in Defendant's Petition, and failed to adequately meet or speak with the Defendant to discuss the status of the Defendant's PCRA Petition. As we agreed with PCRA Counsel, for all of the reasons set forth above, that none of Defendant's issues have any substantive merit, a circumstance

~ 32 ~

that does not lend itself to remedy, Defendant's claims of ineffective stewardship on the part of PCRA Counsel have no merit and do not warrant PCRA relief.

The second claim Defendant raised in his June 20, 2016 Rule 907(1) Response is that his plea counsel coerced his plea by advising him (a) that his chances of an acquittal if he went to trial were "close to 0", (b) that Defendant, as a once convicted Felon, would not be entitled to the presumption of innocence, and (c) that, if convicted, Defendant would be sentenced under the "Repeated Offender Act" [sic] to a mandatory thirty (30) to sixty (60) years in prison. We have already addressed the fact that the record demonstrates that plea counsel did not coerce Defendant into accepting a plea. We have also already addressed the fact that plea counsel's alleged advice to Defendant that, if he went to trial, he would likely be convicted or have a "close to 0" chance of acquittal, in light of the strength of the Commonwealth's case and plea counsel's conclusion, after investigation, that Defendant had no viable defenses, was within the range of competence demanded of attorneys who practice criminal law. *See Commonwealth v. Wah*, 42 A.3d 335 (Pa. Super. 2012)(where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases). We would respectfully incorporate herein by reference and refer this Honorable reviewing Court to those portions of our present Opinion which address these claims above and submit, for all of the reasons aforestated, that these claims of counsel's ineffectiveness have no merit and do not warrant PCRA relief.

As for Defendant's claim that plea counsel was ineffective for advising Defendant that, as a convicted Felon, he would not be entitled to the presumption of innocence,[33] Defendant's claim is belied by the record. At the Verbal Guilty Plea Colloquy, this Court asked Defendant if he reviewed the Written Guilty Plea Colloquy with his plea counsel before he signed it. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11). Defendant replied, "Yes." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11). The Written Guilty Plea signed by the Defendant advises the Defendant at paragraph 25 that

> In order to be convicted, I would have to be proven guilty beyond a "reasonable doubt." A reasonable doubt is a doubt which would cause a person of reasonable prudence to hesitate before acting in a matter of importance to him or herself. *I am presumed innocent, and if the Commonwealth cannot prove me guilty beyond a reasonable doubt, I must be set free on these charges.*

(Written Guilty Plea Colloquy, 7/17/15, at 7, para. 25). Defendant signed his initials in the line provided to the right of this paragraph and signed his name to the bottom of the page. (Written Guilty Plea Colloquy, 7/17/15, at 7). Thus, there is no merit to Defendant's contention that his plea counsel did not advise him of the presumption of innocence or advised him that he would not be entitled to the presumption of innocence

---

[33] This is the first claim we identified in our July 22, 2016 Order directing PCRA Counsel to review Defendant's Rule 907(1) Response and *pro se* letter dated July 18, 2016. We stated in our July 22, 2016 Order,

> PCRA Counsel shall review both Defendant's Rule 907(1) Response and Defendant's *pro se* letter dated July 18, 2016 and advise the Court in writing within thirty (30) days of the date of this Order as to whether Defendant is entitled to an evidentiary hearing on the following issues: (a) whether plea counsel misadvised Defendant of the applicable law (*see* Rule 907(1) Response, 6/20/16, at 2 ['Reason – II'][.]"

(Order dated July 22, 2016, at 1).

~ 34 ~

because of his prior conviction. Plea counsel, in his letter to PCRA Counsel dated August 15, 2016, specifically states

> In my discussions with Mr. Nieves, I never told him that because of prior convictions he lost the presumption of innocence under the law. Mr. Nieves, like any defendant charged in a criminal matter, had the presumption of innocence up until the point he plead guilty and if asked stated as such[.]

(PCRA Counsel's Letter to Court dated August 16, 2016, attached Letter from Plea Counsel to PCRA Counsel dated August 15, 2016). Furthermore, at the beginning of the Verbal Guilty Plea Colloquy, this Court asked Defendant on the record in open court, "And do you understand, young man, that you're presumed to be innocent, you have the right to a jury or non-jury trial?" (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 4). Defendant replied, "Yes, sir." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 4). Defendant was advised in writing and orally that the presumption of innocence applied to him and his claim to the contrary is belied by the record and, quite frankly, patently absurd.

Finally, with respect to Defendant's claim that plea counsel advised him that if he was convicted at trial he would be sentenced to a mandatory thirty (30) to sixty (60) years under the "Repeated Offender Act" [sic], this Court asked plea counsel on the record in open court, in front of the Defendant, whether there were any mandatories applicable to this case, to which plea counsel replied, "No, there are none." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 14). The prosecutor stated that even if there were mandatories involved, "the mandatory would be the guideline range", due, as the prosecutor explained, to Defendant's status as an RVOC. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 13-14). Plea counsel stated on the record that he went over this with the Defendant

~ 35 ~

"[s]everal times." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 14-15). Defendant acknowledged on the record, as we discussed earlier, that no extrajudicial threats or promises were made to him to induce him to plead guilty. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11; Written Guilty Plea Colloquy, 7/17/15, at 6, paras. 17, 18). For all of these reasons, we conclude that Defendant's claim that plea counsel advised him that if he went to trial and was convicted he would receive a mandatory thirty (30) to sixty (60) years under the "Repeated Offender Act" [sic] is without merit and does not warrant PCRA relief.

In his Rule 907(1) Response, Defendant again raised the issues concerning the execution of the search warrant at his residence[4] and his allegedly medicated status during the guilty plea colloquy. With respect to the search warrant issue, we have already addressed our conclusion that Defendant waived his right to contest the execution of the search warrant by tendering a negotiated guilty plea. *Reichle, supra.* To this reasoning we would only add the following. Defendant claimed that the execution of the search warrant was defective because the police only gave Defendant's wife, who is not the homeowner, according to the Defendant, a "quick look-glance" at the warrant after ordering Defendant and his family to vacate the premises and because the Detectives conducted the search while Defendant, who claims to be the sole homeowner, was not present in the home. The acts of which Defendant complains, even if they did occur as he describes them, are not violations of the Rules of Criminal Procedure, *see* Pa. R.Crim.P. 207, 208, but even if they were, technical violations of the Rules of

---

[4] This is the second issue we asked PCRA Counsel to address in our July 22, 2016 remand Order. This issue derives from that paragraph of Defendant's Rule 907(1) Response identified by the Defendant as "Reason – III". (*See* Rule 907(1) Response, 6/20/16, at 2 ["Reason – III"]; Order dated July 22, 2016).

Criminal Procedure do not warrant application of the Exclusionary Rule. *See Commonwealth v. Ruey*, 892 A.2d 802 (Pa. 2006)(violations of the Rules of Criminal Procedure relating to the issuance and execution of search warrants require suppression only when the violations assume constitutional dimensions and/or substantially prejudice the accused). The defects alleged here are neither of constitutional dimension nor did they substantially prejudice the Defendant.

As we indicated above, Defendant, in his Rule 907(1) Response, renewed his contention that his plea counsel induced him to lie about his mental health and medication status at the guilty plea colloquy by, according to Defendant, instilling into Defendant's thought process "subliminal suggestion." (*See* Deft.'s Rule 907(1) Response, 6/20/16, at 2, para. IV). Again, a Defendant may not lie under oath and then claim that his lies entitle him to PCRA relief, even if he asserts that his lies were induced by counsel. *Yeomans, supra*. Defendant's averment that counsel induced his lies through "subliminal suggestion" is, as his argument regarding his Public Defender plea counsel's alleged misrepresentation concerning the applicability of the presumption of innocence, plainly absurd. Further, this Court had the opportunity to observe Defendant and speak with him on the record and there was nothing about Defendant's demeanor or responses that suggested to the Court that his cognition was impaired in any way.

Defendant next claimed in his Rule 907(1) Response that his plea counsel insisted that "[Defendant] and his family should not question or attempt to interfere with his methods for they know nothing of the legal ramifications at work and to simply rely upon his legal expertise because he ([plea counsel]), must do what's necessary to apiese [sic] both [Defendant] and the Commonwealth." (Deft.'s Rule 907(1) Response, 6/20/16, at 3,

~ 37 ~

para. "A"). Defendant claims that counsel's alleged refusal to brook dissension from his advice is a violation of *Lafler v. Cooper*, 132 S.Ct. 1376 (U.S. Mich. 2012) and *Missouri v. Frye*, 132 S.Ct. 1399 (U.S. Mo. 2012), *cert. denied*, 132 S.Ct. 1789 (U.S. Mo. 2012). (Deft.'s Rule 907(1) Response, 6/20/16, at 3, para. "A").

In *Lafler*, *supra*, the defendant lost a plea offer based on counsel's advice to reject the plea and go to trial. *Lafler*, *supra*. The United States Supreme Court held that the Defendant established ineffective assistance of counsel with regard to counsel's advice to go to trial and reject the plea because counsel's advice was based on counsel's incorrect understanding of a point of law. *Id*. The United States Supreme Court held that a defendant's Sixth Amendment right to counsel extends to the plea bargaining process and that during plea negotiations, defendants are entitled to the effective assistance of competent counsel.

In *Missouri v. Frye*, 132 S.Ct. 1399 (U.S. Mo. 2012), *cert. denied*, 132 S.Ct. 1789 (U.S. Mo. 2012), the defendant lost two favorable plea offers because his counsel failed to communicate them; he later pled open and received a heavier sentence than what had previously been offered by the Commonwealth. *Missouri v. Frye*, 132 S.Ct. 1399 (U.S. Mo. 2012), *cert. denied*, 132 S.Ct. 1789 (U.S. Mo. 2012). The United States Supreme Court held that defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. *Id*.

In the matter *sub judice*, there is no question that counsel advised Defendant of the Commonwealth's plea offer. Defendant accepted the plea offer. Nor is there any question that counsel's advice to accept the plea was a reasonable strategy designed to

~ 38 ~

effectuate Defendant's interests. The Commonwealth had a very strong case against the Defendant, Defendant had no viable defenses, and Defendant faced considerable exposure to at least thirty (30) to sixty (60) years in prison if he went to trial *only on the offenses that were the subject of the plea agreement.* Counsel's actions here do not violate either *Lafler, supra* or *Missouri v. Frye, supra.*

Defendant appears to be relying on an argument that may be viewed as the converse of *Lafler, supra* and *Missouri v. Frye, supra,* namely, that if counsel has a duty to communicate plea offers and give competent advice about whether to accept them, counsel has a corollary duty to allow Defendant to question counsel's advice and to reject the plea offer if that is the Defendant's wish. Defendant claims that it is this converse or corollary duty that plea counsel here violated. However, at all times during his guilty plea colloquy, Defendant advised the Court that he had no questions (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11, 15) and he wished to enter a plea of guilty (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 5, 7-8, 10, 12; Written Guilty Plea Colloquy, 7/17/15, at 5, paras. 4, 5); he did in fact enter a plea of guilty (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 5, 7; Written Guilty Plea Colloquy, 7/17/15, at 5, paras. 4, 5) and advised the Court that he understood that his plea meant that the Court would treat him as having committed the crimes that were the subject of the plea bargain. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 7-8, 10). Defendant advised the Court both orally and in writing that he was able to work with his counsel, that he was satisfied with counsel's services, and that no extrajudicial threats or promises were made to him to induce him to plead guilty. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 10, 11; Written Guilty Plea Colloquy, 7/17/15, at 6, paras. 16-18, 39-41). He acknowledged that, while he had been assisted in his decision

by counsel, it was his own decision to enter the plea that he tendered on July 17, 2015. (Written Guilty Plea Colloquy, 7/17/15, at 6, para. 41). As we stated before, Defendant may not represent one position to the Court during a guilty plea colloquy and then try to obtain PCRA relief by asserting that what he represented to the Court at his colloquy was a lie. *Yeomans, supra.* Defendant's *Lafler v. Cooper, supra/Missouri v. Frye, supra* argument has no merit and does not warrant PCRA relief.

Next, Defendant contends that his plea counsel did not "'make an independent examination of the facts, curcumstances [sic], pleadings and laws involved and then offer his/her informed opinion as to what plea or defence [sic] should be entered.'" (Deft.'s Rule 907(1) Response, 6/20/16, at 3, para. "D")(quoting *Von Moltke v. Gillies*, 68 S.Ct. 316 (U.S. Mich. 1948)). Defendant cites *Von Moltke v. Gillies*, 68 S.Ct. 316 (U.S. Mich. 1948) in support of his claim. *Von Moltke, supra* is a somewhat unique case with peculiar facts. In *Von Moltke, supra*, a German national living in the United States was charged with Conspiracy to violate the Espionage Act of 1917 by allegedly agreeing with twenty-three (23) other people to collect and deliver military secrets to the Germans during World War II. *Von Moltke v. Gillies*, 68 S.Ct. 316 (U.S. Mich. 1948). The Defendant was not provided with counsel. *Id.* In tendering her plea, she relied on legal advice provided to her by an F.B.I. lawyer-agent, indisputably a representative of the Federal Government, the opposing party. *Id.* When she later challenged the validity of her plea, the United States Supreme Court held that "[a] challenge to a plea of guilty made by an indigent defendant, for whom no lawyer has been provided, on the ground that the plea was entered in reliance upon advice given by a government lawyer-agent, raises serious constitutional questions." *Von Moltke v. Gillies*, 68 S.Ct. 316 (U.S. Mich. 1948). The

~ 40 ~

United States Supreme Court reversed and remanded the matter for a determination of whether the Defendant validly waived her right to counsel. *Id.* The facts in *Von Moltke, supra* are entirely distinguishable from the facts of the present case, wherein the Defendant was provided with an attorney from the Chester County Office of the Public Defender to represent him in connection with his pre-trial and plea proceedings. We would respectfully submit that the peculiar factual distinctiveness of *Von Moltke, supra* renders that case inapposite to the present matter.

Nevertheless, the *Von Moltke, supra* case does articulate the proposition for which Defendant cited it, but that does not mean that the Defendant is entitled to relief. Unlike the *Von Moltke, supra* case, Defendant was appointed free counsel entirely devoted to his cause who did investigate the facts, circumstances, pleadings and law and who formed a learned opinion as to what plea should be entered in light of what he termed a "strong" case on the part of the Commonwealth, no viable defenses on the part of the Defendant, and Defendant's extensive exposure to significant jail time if Defendant went to trial and were convicted on even a few of the charges set forth in the Information, which he reasonably advised the Defendant was a likely outcome based on the strength of the Commonwealth's case and the lack of any viable defenses available to the Defendant. Plea counsel satisfied the concerns expressed in *Von Moltke, supra*, assuming for purposes of argument that *Von Moltke, supra* has any application to the matter *sub judice*. Defendant's claim to the contrary is without merit.

Defendant also claimed in his Rule 907(1) Response that his plea counsel did not inform him of his basic sentencing liabilities and other considerations so as to enable him to make an informed decision about whether to accept or reject the Commonwealth's

~ 41 ~

plea offer. However, this Court asked plea counsel whether he had reviewed with Defendant the Sentencing Guidelines applicable to the crimes for which he was tendering the plea. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 14). Counsel advised the Court on the record, in front of the Defendant, that he had done so "[s]everal times." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 15). When the Court then asked the Defendant, "Do you have any questions at all?", Defendant replied, "No." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 15). Plea counsel also advised the Court that he reviewed with Defendant the amount of time he could expect as part of his State Parole hit, as he committed these crimes while on State Parole, and whether his back time would be served first or last. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 12). When we asked Defendant, "Do you understand?", Defendant replied, "Yes, sir." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 12). Further, even if counsel had not reviewed with Defendant his sentencing exposure and VOP time, we reviewed these items with Defendant on the record in open court as part of his Verbal Guilty Plea Colloquy. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11-15). Defendant's claim that he was not advised of his basic sentencing liabilities and other considerations so as to enable him to make an informed decision about whether to accept or reject the Commonwealth's plea offer is without substantive merit and does not warrant PCRA relief.

Finally, in his Rule 907(1) Response, Defendant requested that this Court allow further PCRA proceedings, appoint new PCRA Counsel, and vacate his conviction and sentence pending the resolution of whether Defendant's plea was voluntary and "free from the influence of powerful narcotics." (Deft.'s Rule 907(1) Response, 6/20/16, at 5). Based on our determination that none of Defendant's issues have any substantive merit,

~ 42 ~

we would respectfully submit that Defendant's request for further PCRA proceedings, new counsel, and the vacating of his sentence are not warranted.

Because none of the issues Defendant raised in his June 20, 2016 Rule 907(1) Response have any merit, we would respectfully submit that his appeal of those issues should be denied and dismissed.

### E. Claim raised in Defendant's July 18, 2016 Letter to the Court

The only claim that Defendant raised in his July 18, 2016 *pro se* letter to the Court is that his plea was not knowingly, voluntarily and intelligently tendered because he was under the influence of psychotropic medication(s) on the day of the colloquy. We have already addressed this claim above and determined that it is without merit. We would respectfully incorporate herein by reference and refer this Honorable reader to those portions of our present Opinion which explain our rationale for rejecting this claim.

### F. Whether plea counsel was ineffective for advising Defendant to plead guilty

In our July 22, 2016 remand Order, we identified the issue as to whether plea counsel was ineffective for advising Defendant to accept the plea bargain offered by the Commonwealth. To all that we have said on this issue above, which we incorporate herein by reference and to which we respectfully refer this Honorable reader, we would add that given the strengths of the Commonwealth's case, the lack of viable defenses available to the Defendant, and the significant exposure he risked upon conviction at trial, plea counsel's advice to accept the Commonwealth's offer of two (2) concurrent ten (10) year terms followed by ten (10) years of consecutive probation, in essence, an offer requiring only ten (10) years in prison, was within the range of competence demanded of attorneys who practice in the field of criminal law. *Commonwealth v. Wah*, 42 A.3d 335

~ 43 ~

(Pa. Super. 2012). Plea counsel was not ineffective for advising Defendant to accept the Commonwealth's offer.

### G. Validity of Defendant's Plea

To be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. *Commonwealth v. Rush*, 909 A.2d 805 (Pa. Super. 2006), *reargument denied* (November 20, 2006). In order for a guilty plea to be constitutionally valid, the plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. *Commonwealth v. Yeomans*, 24 A.3d 1044 (Pa. Super. 2011), *reargument denied* (August 18, 2011). A defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified. *Commonwealth v. Yeomans*, 24 A.3d 1044 (Pa. Super. 2011), *reargument denied* (August 18, 2011). A showing of manifest injustice may be established if the plea was entered into involuntarily, unknowingly, or unintelligently. *Commonwealth v. Yeomans*, 24 A.3d 1044 (Pa. Super. 2011), *reargument denied* (August 18, 2011).

As the Pennsylvania Superior Court has summarized,

> Pennsylvania has constructed its guilty plea procedures in a way designed to guarantee assurance that guilty pleas are voluntarily and understandingly tendered. The entry of a guilty plea is a protracted and comprehensive proceeding wherein the court is obliged to make a specific determination after extensive colloquy on the record that a plea is voluntarily and understandingly tendered.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1046 (Pa. Super. 2011), *reargument denied* (August 18, 2011)(*quoting Commonwealth v. Fluharty*, 632 A.2d 312, 314 (Pa. Super. 1993)(citation omitted)). Where the record clearly demonstrates that a guilty plea

~ 44 ~

colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. *Commonwealth v. Rush*, 909 A.2d 805 (Pa. Super. 2006), *reargument denied* (November 20, 2006).

Rule 590 of the Pennsylvania Rules of Criminal Procedure requires that a guilty plea be offered in open court, and provides a procedure to determine whether the plea is voluntarily, knowingly, and intelligently entered. *Commonwealth v. Yeomans*, 24 A.3d 1044 (Pa. Super. 2011), *reargument denied* (August 18, 2011). *See also Commonwealth v. Rush*, 909 A.2d 805 (Pa. Super. 2006), *reargument denied* (November 20, 2006)(a court accepting a defendant's guilty plea is required to conduct an on-the-record inquiry during the plea colloquy). Rule 590 does not prohibit the use of a written colloquy that is read, completed, signed by the defendant, and made part of the record of the plea proceedings. Pa. R.Crim.P. 590, *Comment.* This written colloquy would have to be supplemented by some on-the-record oral examination. Pa. R.Crim.P. 590, *Comment.*

As noted in the Comment to Rule 590, at a minimum the trial court should ask questions to elicit the following information: (a) whether the defendant understands the nature of the charges to which he or she is pleading guilty or *nolo contendere*; (b) whether there is a factual basis for the plea; (c) whether the defendant understands that he or she has the right to trial by jury; (d) whether the defendant understands that he or she is presumed innocent until found guilty; (e) whether the defendant is aware of the permissible range of sentences and fines for the offenses charged; and (6) whether the defendant is aware that the judge is not bound by the terms of any plea agreement

~ 45 ~

tendered unless the judge accepts such agreement. Pa. R.Crim.P. 590, *Comment*; *Commonwealth v. Yeomans*, 24 A.3d 1044 (Pa. Super. 2011), *reargument denied* (August 18, 2011); *Commonwealth v. Rush*, 909 A.2d 805 (Pa. Super. 2006), *reargument denied* (November 20, 2006). The Comment to Rule 590 includes a seventh proposed question that is only applicable when a defendant pleads guilty to Murder generally. *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 n. 2 (Pa. Super. 2011), *reargument denied* (August 18, 2011).

Reiterating and expanding on what we stated above,

> [i]n order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there [may be] an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011), *reargument denied* (August 18, 2011)(*quoting Commonwealth v. Fluharty*, 632 A.2d 312, 314-15 (Pa. Super. 1993)(citations omitted)).

> Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise.
>
> . . .
>
> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath

and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

. . .

A defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011), *reargument denied* (August 18, 2011)(*quoting Commonwealth v. Pollard*, 832 A.2d 517, 523-24 (Pa. Super. 2010)(citations omitted)). The law does not require that a defendant be completely satisfied with the outcome of his decision to plead guilty, only that the plea be voluntary, knowing and intelligent. *Commonwealth v. Rush*, 909 A.2d 805 (Pa. Super. 2006), *reargument denied* (November 20, 2006).

A review of the record *sub judice* reveals that Defendant's plea was voluntarily, knowingly, and intelligently entered. A Verbal Guilty Plea was conducted with the Defendant on the record in open court. (*See* Verbal Guilty Plea Colloquy and Sentencing Transcript, 7/17/15, N.T. 1-23). In addition, Defendant executed a comprehensive Written Guilty Plea Colloquy. (*See* Written Guilty Plea Colloquy, 7/17/15, 1-10). The record demonstrates that each of the mandatory six (6) areas of inquiry were explored with this Defendant.

With respect to the first area of inquiry, whether Defendant understands the nature of the charges to which he is tendering his plea, we asked Defendant, "Are you aware of what you have been charged with?" (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 3). Defendant replied, "Yes." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 3). We reviewed

~ 47 ~

with the Defendant the elements of each offense. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 9-10). We asked Defendant whether he understood the elements of these offenses. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 10). Defendant replied, "Yes." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 10). We asked Defendant whether he had any questions about the elements of these offenses. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 10). Defendant replied, "No." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 10). In addition to this oral colloquy, Defendant signed a Written Guilty Plea Colloquy that set forth the nature and elements of the offenses to which he was tendering his plea. (Written Guilty Plea Colloquy, 7/17/15, at 1-2). The Written Guilty Plea Colloquy contained the following items.

1. I hereby enter a plea of guilty to the charges set forth on the cover pages. [/s/] NN

2. I have read and understand the cover pages. [/s/] NN

. . .

4. I admit committing the crimes to which I am pleading guilty. [/s/] NN

5. I acknowledge that the facts occurred as set forth on page 2 of this form. [/s/] NN

. . .

15. Do you understand the charges against you? [/s/] NN

(Written Guilty Plea Colloquy, 7/17/15, at 5-6). Defendant signed his initials after each paragraph and signed his name at the bottom of each page. (Written Guilty Plea Colloquy, 7/17/15, at 5-6). Thus the first area of mandatory inquiry is satisfied.

With respect to the second area of mandatory inquiry, whether there was a factual basis for the plea, as we demonstrated in the beginning of this Opinion, a factual basis was recited for the plea. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 4-10; Written Guilty Plea Colloquy, 7/17/15, at 2). Thus, the second area of mandatory inquiry is satisfied.

With respect to the third area of mandatory inquiry, whether the Defendant understands that he has the right to trial by jury, we asked the Defendant at the beginning of the Verbal Guilty Plea Colloquy, "And do you understand, young man, that you're presumed to be innocent, you have the right to a jury or non-jury trial?" (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 4). Defendant replied, "Yes, sir." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 4). In addition, the Written Guilty Plea Colloquy advised the Defendant that he "need not enter a plea of guilty, but may plead not guilty and go to trial." (Written Guilty Plea Colloquy, 7/17/15, at 6, para. 19). Defendant wrote his initials in the line provided to the right of this paragraph and signed his name at the bottom of the page. (Written Guilty Plea Colloquy, 7/17/15, at 6). Thus, the third area of mandatory inquiry is satisfied.

With respect to the fourth area of mandatory inquiry, whether the Defendant understands that he or she is presumed innocent until found guilty, we have already discussed how both counsel and this Court advised the Defendant that he did indeed enjoy the presumption of innocence in these matters. We would incorporate herein by reference and respectfully refer this Honorable reviewing Court to those portions of the present Opinion which address this issue above. We reiterate that we advised Defendant of the presumption of innocence at the beginning of the Verbal Guilty Plea Colloquy when we asked, "And do you understand, young man, that you're presumed to be innocent,

~ 49 ~

you have the right to a jury or non-jury trial?" (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 4). Defendant replied, "Yes, sir." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 4). The Written Guilty Plea Colloquy advised the Defendant that

> [i]n order to be convicted, I would have to be proven guilty beyond a "reasonable doubt". A reasonable doubt is a doubt which would cause a person of reasonable prudence to hesitate before acting in a matter of importance to him or herself. *I am presumed innocent*, and if the Commonwealth cannot prove me guilty beyond a reasonable doubt, I must be set free on these charges.                                    [/s/] NN

(Written Guilty Plea Colloquy, 7/17/15, at 7, para. 25). Defendant signed his initials on the line provided to the right of this paragraph and signed his name at the bottom of the page. (Written Guilty Plea Colloquy, 7/17/15, at 7). (*See also* PCRA Counsel's Letter to the Court dated August 16, 2016 with attached Letter from Plea Counsel at para. 1). Thus, the third area of mandatory inquiry is satisfied.

With respect to the fifth area of mandatory inquiry, whether the Defendant was aware of the permissible range of sentences and/or fines for the offenses charged, we advised Defendant on the record in open court of the maximum sentences and fines that were applicable to the crimes for which he was tendering his plea as well as what his Statewide Sentencing Guidelines exposure would be. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 12-15). Plea counsel advised the Court that he had gone over these matters with the Defendant "[s]everal times." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 12, 15). Defendant assured the Court that he understood. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 12, 15). In addition, the Written Guilty Plea Colloquy executed by the Defendant set forth the maximum penalties and fines applicable to the crimes for which Defendant was tendering his plea. (Written Guilty Plea Colloquy, 7/17/15, at 1-2).

Defendant signed his name at the bottom of these pages. Also, as we demonstrated above, Defendant placed his initials beside the paragraph of the Written Guilty Plea Colloquy which averred, "I have read and understand the cover pages." (Written Guilty Plea Colloquy, 7/17/15, at 5). He also signed his name at the bottom of that page. (Written Guilty Plea Colloquy, 7/17/15, at 5). Thus, the fifth area of mandatory inquiry is satisfied.

With respect to the sixth area of mandatory inquiry, namely, whether the defendant was aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement, the undersigned advised Defendant on the record in open court that "I'm not bound by the terms of this plea agreement unless I accept it. If I reject it, you may step down and withdraw your plea." (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 11). In addition, the Written Guilty Plea Colloquy advised the Defendant,

> The Court is not bound by the terms of the plea agreement that I have entered into with the Commonwealth on pages 3 and 4 of this form, but if the Court rejects it, I may withdraw my plea of guilty and enter a plea of not guilty.    [/s/] NN

(Written Guilty Plea Colloquy, 7/17/15, at 8, para. 31). Defendant placed his initials in the line provided to the right of this paragraph and signed his name at the bottom of the page. (Written Guilty Plea Colloquy, 7/17/15, at 8). Thus, the sixth area of mandatory inquiry is satisfied.

In addition to all of the areas of mandatory inquiry, our record colloquy, both oral and written, inquired about Defendant's age, educational status and his ability to read, write and understand the English language. (Verbal Guilty Plea Colloquy, 7/17/15, N.T.

~ 51 ~

2-3; Written Guilty Plea Colloquy, 7/17/15, at 5). We learned that Defendant was, at the time of the plea, twenty-nine (29) years old and a graduate of Coatesville Area Senior High School. (Verbal Guilty Plea Colloquy, 7/17/15, N.T. 2-3; Written Guilty Plea Colloquy, 7/17/15, at 5). We also explored, as we discussed earlier *infra*, the issues Defendant later raised in his PCRA Petition and with which he attempted to impugn the validity of his plea.

The record demonstrates that Defendant tendered his plea voluntarily, knowingly and intelligently. He understood the nature of the charges against him, what the plea connoted, and its consequences. The record is devoid of evidence of manifest injustice. Defendant's plea is constitutionally valid.

## H. Claims raised in *de facto* Rule 1925(b) Statement

The first few claims Defendant raised in his *de facto* Statement of Matters Complained of on Appeal, which was attached to his Notice of Appeal, purport to challenge the stewardship of PCRA Counsel for PCRA Counsel's alleged failure to adequately investigate Defendant's PCRA claims, failure to remedy the defects in Defendant's PCRA Petition and failure to meet or personally speak to the Defendant about his PCRA. (*See* Deft.'s Statement, at 2 paras. 1-4). As they all concern the stewardship of PCRA Counsel, we will treat them in the aggregate, for convenience's sake, as one claim. The record, as we have discussed above, amply demonstrates that none of the issues Defendant raised in his PCRA Petition and related documents have any substantive merit. The lack of substantive merit in any of Defendant's contentions does not lend itself to correction by PCRA Counsel. It is a fatal flaw in Defendant's attempt to challenge the validity of his plea and is inherent in the foundation of the

~ 52 ~

theories he advances. There is no remedy for these defects. Because none of Defendant's issues have any substantive merit, Defendant's various challenges to the stewardship of his plea counsel fail. *Commonwealth v. Chmiel*, 30 A.3d 1111 (Pa. 2011)(failure to meet any one of the three prongs of the test for ineffectiveness defeats the claim). Because Defendant does not have a valid claim of ineffective assistance against plea counsel, Defendant's claim of ineffective assistance of PCRA Counsel likewise fails. *Commonwealth v. Chmiel*, 30 A.3d 1111 (Pa. 2011)(failure to satisfy test for ineffectiveness against trial counsel defeats a layered ineffectiveness claim against subsequent counsel). Thus, Defendant's challenges to the stewardship of PCRA Counsel have no merit and should, respectfully, be denied and dismissed. *See also Commonwealth v. Maple*, 559 A.2d 953 (Pa. Super. 1989)(defendant is not entitled to the appointment of new counsel after initial PCRA counsel has properly been allowed to withdraw under the *Turner/Finley* procedures). Defendant's claims against PCRA Counsel have no merit and should, respectfully, be denied and dismissed.

The next issue Defendant raised in his statement of matters complained of is a reiteration of his *Lafler v. Cooper*, *supra* and *Missouri v. Frye*, *supra* argument. We would respectfully incorporate herein by reference and refer this Honorable reader to those portions of the present Opinion above which address this issue. We respectfully submit for all of the reasons aforestated that this issue has no merit and should, respectfully, be denied and dismissed.

The third issue Defendant raised in his statement of matters complained of on appeal is that plea counsel was ineffective for "compel[ling] the plea agreement without [Defendant's] understanding and consent." We respectfully submit, for all of the reasons

~ 53 ~

set forth in the body of this Opinion, that Defendant's contention that his plea counsel compelled his acceptance of the Commonwealth's offer or compelled him to enter a plea agreement without his consent is completely without foundation in the record and without merit, and should, respectfully, be denied and dismissed.

The fourth and final issue Defendant raised in his *de factor* Rule 1925(b) Statement reiterates his *VonMoltke v. Gillies, supra* claim. We would respectfully submit that we have already addressed this claim above. We would respectfully incorporate herein by reference and refer this Honorable reader to that portion of our present Opinion which addresses the merits of Defendant's claim. We respectfully submit, for all of the reasons aforestated, that Defendant's claim has no merit and should, respectfully, be denied and dismissed.

## III.    SUMMARY DISMISSAL

"'The right to an evidentiary hearing on a post-conviction petition is not absolute.'" *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012)(*quoting Commonwealth v. Turetsky*, 925 A.2d 876, 882 (Pa. Super. 2007), *appeal denied*, 940 A.2d 365 (Pa. 2007)). "'It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support in either the record or other evidence.'" *Id.* "Where a PCRA petition does not raise a 'genuine issue[ ] of material fact,' the reviewing court is not required to hold an evidentiary hearing on the petition." *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013)(*quoting Commonwealth v. Clark*, 961 A.2d 80, 85 (Pa. 2008), *cert. denied, Clark v. Pennsylvania*, 130 S.Ct. 810 (U.S. Pa. 2009)). "Thus, to entitle himself to a hearing, [the petitioner] must raise an

issue of fact, which, if resolved in his favor, would justify relief." *Commonwealth v. Simpson*, 66 A.3d 253, 260-61 (Pa. 2013).

It is the responsibility of the reviewing Court on appeal to examine each issue raised in the PCRA Petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012). In executing this task, the appellate courts apply an abuse of discretion standard. *Commonwealth v. Rush*, 838 A.2d 651, 659 (Pa. 2003), *application for extraordinary relief denied*, 934 A.2d 1151 (Pa. 2007). An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record. *Commonwealth v. Antidormi*, 84 A.3d 736 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

To aid this Honorable reviewing Court in its duty, we have examined all of the issues Defendant raised in his first PCRA Petition and related documents. As we have discussed herein, it is our position that none of the issues Defendant has raised have any substantive merit. We would respectfully submit that the record as it stands at present is more than adequate to support this conclusion. Accordingly, we would respectfully submit that no hearing was necessary to address the merits of Defendant's first PCRA Petition and that we did not abuse our discretion by dismissing Defendant's first PCRA Petition without holding a hearing.

~ 55 ~

## IV.    STANDARD OF REVIEW

As our appellate courts have established, in PCRA proceedings, an appellate court's scope of review is limited by the PCRA's parameters; since most PCRA appeals involve mixed questions of law and fact, the standard of review is whether the PCRA court's findings are supported by the record and free of legal error. *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009), *subsequent habeas corpus proceeding denied, Pitts v. Kerestes*, 2013 WL 4718950 (E.D. Pa. 2013). The Pennsylvania Superior Court review an Order dismissing a PCRA petition in the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Oliver*, 128 A.3d 1275 (Pa. Super. 2015). The Superior Court's review of an Order dismissing a PCRA petition is limited to the findings of the PCRA court and the evidence of record. *Commonwealth v. Oliver*, 128 A.3d 1275 (Pa. Super. 2015). The Superior Court will not disturb a PCRA court's Order dismissing a PCRA petition if the Order is supported by the evidence of record and is free of legal error. *Commonwealth v. Oliver*, 128 A.3d 1275 (Pa. Super. 2015). The Superior Court will grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record; however, the Superior Court affords no such deference to a PCRA court's legal conclusions. *Commonwealth v. Oliver*, 128 A.3d 1275 (Pa. Super. 2015). Where a PCRA petition raises questions of law, the Superior Court's standard of review is *de novo* and its scope of review is plenary. *Commonwealth v. Oliver*, 128 A.3d 1275 (Pa. Super. 2015). The Superior Court may affirm a PCRA court's dismissal of a PCRA petition on any grounds if the record supports it. *Commonwealth v. Oliver*, 128 A.3d 1275 (Pa. Super. 2015).

## V.    CONCLUSION

We would respectfully submit that our analysis of the merits of the issues raised by the Defendant in his first PCRA Petition and related documents survives the threshold for appellate review.  To that end, we would respectfully submit that our factual findings are supported by the record and our conclusions of law are free from error.  Consistent with our analysis as set forth above, we would respectfully submit that none of Defendant's issues has any substantive merit.  Accordingly, we would respectfully recommend that this Honorable reviewing Court deny and dismiss Defendant's appeal and affirm our Order dated August 30, 2016 summarily dismissing his first PCRA Petition.

BY THE COURT:

_____12/7/16_____
Date

_____
Anthony A. Sarcione,                    J.

Certified From The Record
This _____ Day of _____ 20__
_____
Deputy Clerk of Common Pleas Court

~ 57 ~